AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the
### Western District of Washington

FILED ___ LODGED
___ RECEIVED

**SEP 21 2018**

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Instagram, LLC Account FBID: ⬛⬛⬛⬛⬛⬛,
hosted at premises controlled by Facebook, Inc., as
further described in Attachment A

)
)
)
)
)
)

Case No. MJ18 - 5215

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, attached hereto and incorporated herein by reference

located in the _____ **Northern** _____ District of _____ **California** _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2243(a)(1)(2) | Sexual abuse of a minor; |
| 18 U.S.C. § 1153(a) | Offenses committed in Indian Country |

The application is based on these facts:

See Affidavit of Special Agent Ted R. Halla, FBI, attached hereto and incorporated herein by reference

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

**Ted R. Halla, FBI Special Agent**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **September 21, 2018**

*Judge's signature*

City and state:  **Tacoma, Washington**

**Theresa L. Fricke, U.S. Magistrate Judge**
*Printed name and title*

2018R00981

## ATTACHMENT A

### INSTAGRAM ACCOUNT TO BE SEARCHED

This warrant applies to information associated with the Instagram account:

> VICTIM ACCOUNT:
> Name: [Minor Victim]
> Instagram Account FBID:
> Username/Vanity name:

As well as other subscriber and log records associated with the account, which is stored at premises owned, maintained, controlled, and operated by Facebook, Inc., an electronic communications service and remote computing services provider headquartered at 1601 Willow Road, Menlo Park, California, 94025.

ATTACHMENT A - 1
USAO #2018R00981

## ATTACHMENT B
### ITEMS TO BE SEIZED

**I. Information to be disclosed**

To the extent that the information described in Attachment A related to the VICTIM ACCOUNT to be searched is within the possession, custody, or control of Instagram LLC, including any communications, records, files, logs, posts, payment records, or information that has been deleted but is still available to Instagram, LLC, or has been preserved pursuant to requests made under 18 U.S.C. § 2703(f), Instagram, LLC is required to disclose the following information to the government for the VICTIM ACCOUNT listed in Attachment A:

///
///
///
///

ATTACHMENT B - 1
USAO #2018R00981

1        a.    The contents of all communications associated with the account,

2 including stored or preserved copies of content sent to and from the account, draft

3 communications, the source and destination of any communications, the date and time at

4 which the communications were sent;

5       b.    All records or other information regarding the identification of the

6 account, to include full name, physical address, telephone numbers and other identifiers,

7 records of session times and durations, the date on which the account was created, the

8 length of service, the IP address used to register the account, log-in IP addresses

9 associated with session times and dates, account status, alternative e-mail addresses

10 provided during registration, methods of connecting, log files, and means and source of

11 payment (including any credit or bank account number);

12       c.    The types of service utilized;

13       d.    All records or other information stored at any time by an individual

14 using the account, including address books, contact and buddy lists, calendar data,

15 pictures, files, and the contents of any accounts associated with the VICTIM ACCOUNT;

16 and

17       e.    All records pertaining to communications between

18 Facebook/Instagram and any person regarding the account, including contacts with

19 support services and records of actions taken.

20 //

21 //

22 //

ATTACHMENT B - 2
USAO #2018R00981

**II.    Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 2243(a)(1)(2) (Sexual Abuse of a Minor), and 18 U.S.C. § 1153(a) (Offenses Committed in Indian Country) committed on or about June 2, 2018, including, for each account or identifier listed in Attachment A, information pertaining to the following matters:

//
//
//
//

1          a.      All messages, documents, and profile information, attachments, or
2   other data that serves to identify any persons who use or access the account specified, or
3   who exercise in any way any dominion or control over the specified account;
4          b.      Any address lists or "friend"/contact lists associated with the
5   specified account;
6          c.      The types of services utilized;
7          d.      All messages, documents, attachments and data content relating to or
8   referencing contact between EMMITT JACKSON and the VICTIM ACCOUNT;
9          e.      All subscriber records associated with the specified account,
10  including name, address, local and long distance telephone connection records, or records
11  of session times and durations, length of service (including start date) and types of
12  service utilized, telephone or instrument number or other subscriber number or identity,
13  including any temporarily assigned network address, and means and source of payment
14  for such service) including any credit card or bank account number;
15         f.      Any and all other log records, including IP address captures,
16  associated with the specified account; and
17         g.      Any records of communications between Instagram LLC, and any
18  person about issues relating to the account, such as technical problems, billing inquiries,
19  or complaints from other users about the specified account, including records of contacts
20  between the subscriber and the provider's support services, as well as records of any
21  actions taken by the provider or subscriber as a result of the communications.
22
23
24
25
26
27
28

ATTACHMENT B - 4
USAO #2018R00981

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS**
**PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Instagram, LLC and my official title is _____. I am a custodian of records for Instagram, LLC. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Instagram, LLC, and that I am the custodian of the attached records consisting of

_____ (pages/CDs/kilobytes). I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

    b.    such records were kept in the ordinary course of a regularly conducted business activity of Instagram, LLC; and

    c.    such records were made by Instagram, LLC as a regular practice.

    I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

Date: _____ Signature: _____

ATTACHMENT B - 5
USAO #2018R00981

# AFFIDAVIT

STATE OF WASHINGTON )
)        ss
COUNTY OF PIERCE )

I, Ted R. Halla, being first duly sworn under oath, depose and state as follows:

## I.        INTRODUCTION

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been so employed for over eighteen years.  I am currently assigned to the Poulsbo Resident Agency of the Seattle Division.  While employed as an FBI Agent I have led investigations and/or participated in investigations of a wide array of federal criminal violations, including bank robbery, fugitives, drug crimes, organized crime, crimes against children, and crimes occurring in Indian Country, including those involving rape.  The latter is the subject of this affidavit.

3.      My training has included courses in law enforcement techniques, federal criminal statutes, conducting complex criminal investigations, physical and electronic surveillance techniques, evidence collection techniques, and the execution of search warrants.

4.      I make this Affidavit in support of an application for a search warrant pursuant to Rule 41 of the Federal Rules of Criminal Procedure for information associated with Instagram account FBID: _____ (Minor Victim), username/vanity name _____ and _____ (the "VICTIM ACCOUNT") that are stored at the premises controlled by Facebook, a social media platform headquartered at 1601 Willow Road, Menlo Park, CA 94025.  The account to be searched is fully described in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Instagram, LLC to disclose and provide copies to the government of the information (including the content of

1   communications) further described in Section I of Attachment B.  Upon receipt of the

2   information described in Section I of Attachment B, government-authorized persons will

3   review that information to locate the items described in Section II of Attachment B.

4        5.     The facts set forth in this Affidavit are based on my own personal

5   investigation; information obtained from other individuals during my participation in this

6   investigation, including other law enforcement officers; the review of documents and records

7   related to this investigation; communications with others who have personal knowledge of

8   the events and circumstances described herein; and information gained through my training

9   and experience.

10       6.     Because this Affidavit is submitted for the limited purpose of providing

11  sufficient facts necessary to determine whether there is probable cause in support of the

12  application for a search warrant, it does not set forth each and every fact that I or others have

13  learned during the course of this investigation.  I have set forth only the facts that I believe

14  are relevant to the determination of probable cause to believe that evidence, fruits, and

15  instrumentalities of violations of 18 U.S.C. § 2243(a) (Sexual Abuse of a Minor), and

16  18 U.S.C. § 1153(a) (Offenses Committed in Indian Country) will be found in the VICTIM

17  ACCOUNT.

18            **II.**     **SUMMARY OF INVESTIGATION**

19       7.     On or about June 14, 2018, Officers with the Neah Bay Department of Public

20  Safety were contacted by a woman who is identified herein as "MD" to protect her privacy

21  (other witnesses are similarly identified by initials herein for the same reason).  MD reported

22  that her fourteen year-old daughter, "Jane Doe," had been raped on or about June 2, 2018, by

23  a twenty-one year-old man who she identified as EMMITT JACKSON, who is also known

24  as EMMITT SWAN.  MD said she became concerned when she began hearing that kids at

25  Doe's school were spreading rumors that Doe had slept with JACKSON, a family member.

26  Consequently, MD explained that she contacted the parents of some of these kids and

27  learned that on or about June 2, 2018, Doe and some of her minor-aged friends had been

28  hanging out by the Tribe's marina, smoking marijuana.  According to MD, Doe contacted

AFFIDAVIT OF S/A TED R. HALLA - 2
USAO #2018R00981

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 JACKSON to see if she could get some marijuana from him. MD stated that she knew that
2 JACKSON had previously been "messaging" Doe and that he had been warned not to
3 communicate with Doe or her other minor-aged friends.

4    8.    Doe subsequently went to the police station, where she provided an audio and
5 video recorded interview. She told the officers that on the date in question, she was hanging
6 out with her friend "MP" and had made plans to spend the night at her friend's house. Doe
7 admitted that earlier in the evening she had purchased six "joints" of marijuana from another
8 tribal member. According to Doe, while at MP's house she received text messages from
9 other friends asking her and MP to come down to the Tribe's marina to hang out. Around
10 this time, Doe stated that JACKSON texted her on her Instagram social media account (the
11 VICTIM ACCOUNT) and asked her what she was doing. Doe explained that she told
12 JACKSON that she was going to the marina to hang out with friends. She stated that
13 JACKSON replied that he was staying on a boat down at the marina and that he had "weed"
14 if she wanted to come by.

15    9.    Doe said that she and MP walked down to the marina and met up with other
16 friends. Shortly thereafter, Doe said she walked alone toward the boat that JACKSON was
17 staying at, met him halfway, and then they walked onto the boat together. Doe explained
18 that JACKSON pulled out some baggies and small round containers of marijuana and some
19 money, placing them onto a table, and then showed Doe around the boat, including the bunk
20 area where he slept.

21    10.    Doe then stated that JACKSON pushed her onto his bed in the bunk area,
22 removed her pants, underwear, and shirt and raped her, penetrating Doe vaginally with his
23 penis and without wearing a condom. Doe stated that during the sexual assault, she asked
24 him to stop and to let her go home. Afterwards, Doe said she put her clothing back on and
25 that JACKSON gave her some marijuana. Doe also stated that JACKSON warned her not to
26 tell anyone and to erase the messages between them because he could get in trouble.

27    11.    Doe said she then left the boat by herself and returned to her friends at the
28 marina. According to Doe, she told MP that she had the weed and then they returned to

AFFIDAVIT OF S/A TED R. HALLA - 3
USAO #2018R00981

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   MP's house.  Doe also stated that she told MP that she had to have sex with JACKSON to

2   get the marijuana.

3        12.     Doe told the officers that she did not know the name of the boat in question,

4   but was able to provide a physical description and its location at the marina.  Officers asked

5   Doe if she still had any of the messages from JACKSON on her cellular phone.  Doe stated

6   that she did not because she deleted them at JACKSON's request.

7        13.     Following the interview with Doe, officers spoke again with MD who stated

8   that Doe had shown her a text message that someone had sent to Doe's boyfriend, stating

9   that Doe had slept with a guy to get marijuana down at the boat.  MD stated that the text

10  message didn't say anything about JACKSON, but that Doe had told her she received

11  "weed" from JACKSON.

12       14.     Officers then conducted an audio and video recorded interview of JACKSON,

13  who was being held in the Neah Bay jail on unrelated charges.  After being given his

14  Miranda warnings, JACKSON stated that he had been fishing with "JR" on a boat named the

15  "Angela Carol."  JACKSON said that he was homeless, but would stay place to place,

16  including on the Angela Carol.  The officers asked JACKSON if he communicated with

17  young girls on social media.  JACKSON stated that girls sometimes try to communicate with

18  him through social media such as Snap Chat.  When asked if he had supplied marijuana to

19  Doe, JACKSON initially denied doing so, but later admitted that he had given Doe

20  marijuana while on the Angela Carol.  JACKSON also admitted they had sat down at the

21  table on the Angela Carol, and that after giving Doe marijuana, Doe went back to the marina.

22  When asked whether he had had sex with Doe, JACKSON requested to speak with an

23  attorney and the interview was terminated.

24       15.     Officers then contacted "JR," the owner of the Angela Carol, who gave them

25  permission to go onto the boat and collect evidence.  They did so and collected bedding

26  sheets and blankets from a bunk area that matched the description provided by Doe.

27  Photographs and a video recording documented the search and collection of evidence by the

28  officers.

AFFIDAVIT OF S/A TED R. HALLA - 4
USAO #2018R00981

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

16.     On June 15, 2018, officers met with MD and Doe and collected Doe's cellular phone and some of the clothing items that she was believed to have been wearing on June 2, 2018. Doe also provided officers with details of her Instagram social media account (the VICTIM ACCOUNT), as well as a written statement of the events on the date in question. Doe and MD also signed consent forms to allow officers to search Doe's cellular phone.

17.     Doe's written statement provides in part, *"Emmit Swan texted me and was texting me for awhile and it was off and on conversations when i was at* [MC's] *he texted and asked what i was doing and asked if i wanted weed and i said yes and he said you can come get it. So while we was at the dock i walked down to the boat where Emmit was staying at and we smoked and smoked a dab pen and then we had Sex, Basically rape because i didn't want it anymore."*

18.     On June 15, 2018, officers conducted an audio and video recorded interview of MP at her residence. MP stated that during the night in question, Doe had been communicating through her Instagram account with JACKSON prior to and while Doe was at her house. MP explained that Doe had stated in front of her and another friend, "HV," that JACKSON was going to give her marijuana if she slept with him. According to MP, when she and Doe arrived at the marina that evening, Doe went down into a boat to meet up with JACKSON. She said that when Doe returned, she stated to MP that they *"did it"* and that she got the marijuana. MP stated that approximately ten minutes later, they both saw JACKSON walking up the dock. MP recalled Doe stating, *"Oh there he is."* MP stated that Doe seemed *"normal"* after returning with the weed and did not seem upset. MP said that they then left and smoked the marijuana together at another location.

19.     On June 15, 2018, officers conducted an audio and video recorded interview of "HV" at her residence. HV stated she was hanging out with MP and Doe the night in question and Doe stated she met someone, and HV understood that Doe and this person were going to have sex. HV said she then heard JACKSON's name and did not want to be around him. HV stated she understood that Doe was going to meet up with JACKSON later in the evening and recalled a discussion about whether JACKSON was a cousin to Doe. HV

AFFIDAVIT OF S/A TED R. HALLA - 5
USAO #2018R00981

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  explained she saw some of the Facebook messenger messages between JACKSON and Doe

2  on Doe's cellular phone and that they were communicating about meeting up. According to

3  HV, Doe told her that if she did not want to be around JACKSON, then she could leave, and

4  did so.

5       20.    On June 18, 2018, Neah Bay Police Officer Jedediah Johnson applied for and

6  received a search warrant from the Makah Tribal Court for JACKSON'S cellular phone,

7  which had been seized at the time of his arrest on an unrelated charge. I understand that

8  officers were unable to examine the contents of JACKSON'S phone due to the presence of

9  password security software on the phone.

10       21.    On August 20, 2018, officers received a voluntary written statement from MP.

11  The statement reads: "*One night [Doe] messaged me asking if she could spend the night, so I*

12  *told her yeah, then when she got here she told she has been messaging Emmett that she was*

13  *planning to meet up with him to have sex and get weed, so I tried to convince her not to go*

14  *but she was determined to go, so I agreed to walk with her, so she didn't have to go alone*

15  *and they were at his boat for about 30 minutes and I was texting her to hurry up and she was*

16  *done she came back and met up with me and was bragging about how she got the weed and*

17  *how much fun she had with him and was laughing about it and told me details of the stuff*

18  *they did, then we came back to my house and went to bed and a few days later, her mom*

19  *came to my house and asked me about it and I told her the truth.*"

20  **III.    BACKGROUND REGARDING INSTAGRAM'S SERVICES**

21       22.    Instagram is an online social networking application made for photo-sharing

22  that enables its users to take pictures and share them either publicly or privately on the app,

23  as well as through a variety of other social networking platforms, such as Facebook, Twitter,

24  Tumblr, and Flickr. In August 2015 a new version of Instagram was developed which

25  allows users to upload media captured in any aspect ratio. Users can also apply digital filters

26  to their images and videos. Instagram was acquired by Facebook in April 2012.

27       23.    Every user who creates an Instagram account has a profile and news feed.

28  When a user posts a photo or video on Instagram, it will be displayed on the user's profile.

AFFIDAVIT OF S/A TED R. HALLA - 6
USAO #2018R00981

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   A user profile may be customized to include the user's name, photo, short biography, and a

2   website link, if the user has one.  Users who "follow" you will see your posts in their own

3   feed.  Likewise, you will see posts from the users whom you follow on your news feed.  A

4   user profile can be set to public or private.  If a user account is public, anyone can find and

5   view the user's profile along with all the photos and videos they post.

6        24.   A user can interact with other users on Instagram by following them, being

7   followed by them, commenting on the other user's posts, liking and/or tagging another user's

8   posts, and by exchanging private messages with other users.  Additionally, a user can save

9   photos they see on Instagram.

10   **IV.   INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

11        24.   Pursuant to Title 18, United States Code, Section 2703(g), this application and

12   affidavit for a search warrant seeks authorization to permit Instagram, and its agents and

13   employees, to assist agents in the execution of this warrant.  Once issued, the search warrant

14   will be presented to Instagram with direction that the company identify the Instagram

15   account described in Attachment A to this Affidavit, as well as other subscriber and log

16   records associated with the accounts, as set forth in Section I of Attachment B to this

17   Affidavit.

18        25.   The search warrant will direct Instagram to create an exact copy of the

19   specified account and records.

20        26.   I, and/or other law enforcement personnel, will thereafter review the copy of

21   the electronically stored data, and identify from among that content those items that come

22   within the items identified in Section II to Attachment B, for seizure.

23        27.   Analyzing the data contained in the forensic image may require special

24   technical skills, equipment, and software.  It could also be very time-consuming.  Searching

25   by keywords, for example, can yield thousands of "hits," each of which must then be

26   reviewed in context by the examiner to determine whether the data is within the scope of the

27   warrant.  Merely finding a relevant "hit" does not end the review process.  Keywords used

28   originally need to be modified continuously, based on interim results.  Certain file formats,

AFFIDAVIT OF S/A TED R. HALLA - 7
USAO #2018R00981

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    moreover, do not lend themselves to keyword searches, as keywords, search text, and many
2    common e-mail, database and spreadsheet applications do not store data as searchable text.
3    The data may be saved, instead, in proprietary non-text format.  And, as the volume of
4    storage allotted by service providers increases, the time it takes to properly analyze
5    recovered data increases, as well.  Consistent with the foregoing, searching the recovered
6    data for the information subject to seizure pursuant to this warrant may require a range of
7    data analysis techniques and may take weeks or even months.  All forensic analysis of the
8    data will employ only those search protocols and methodologies reasonably designed to
9    identify and seize the items identified in Section II of Attachment B to the warrant.
10        28.    Based on my experience and training, and the experience and training of other
11   agents with whom I have communicated, it is necessary to review and seize a variety of
12   messenger communications, chat logs, files, payment records, and documents that identify
13   any users of the subject account and communications sent or received in temporal proximity
14   to incriminating messages that provide context to the incriminating communications.
15   //
16   //
17   //
18
19
20
21
22
23
24
25
26
27
28

AFFIDAVIT OF S/A TED R. HALLA - 8
USAO #2018R00981

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CONCLUSION

29.     Based on the foregoing, I believe there is probable cause that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2243(a)(1)(2) (Sexual Abuse of a Minor), and 18 U.S.C. § 1153(a) (Offenses Committed in Indian Country) are located in the VICTIM ACCOUNT, as more fully described in Attachment A to this Affidavit.  I therefore request that the Court issue a warrant authorizing a search of the VICTIM ACCOUNT for the information set forth in Section I of Attachment B of this Affidavit, and the seizure of the content more fully described in Section II of Attachment B hereto, incorporated herein by reference, of any such items found therein.

TED R. HALLA, Affiant
Special Agent
Federal Bureau of Investigation

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the 21ST day of September, 2018

THERESA L. FRICKE
United States Magistrate Judge

AFFIDAVIT OF S/A TED R. HALLA - 9
USAO #2018R00981

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

## <u>ATTACHMENT A</u>

### INSTAGRAM ACCOUNT TO BE SEARCHED

This warrant applies to information associated with the Instagram account:

VICTIM ACCOUNT:
Name: [Minor Victim]
Instagram Account FBID: ▮▮▮▮▮▮▮▮▮
Username/Vanity name: ▮▮▮▮▮▮▮▮▮▮▮

As well as other subscriber and log records associated with the account, which is stored at premises owned, maintained, controlled, and operated by Facebook, Inc., an electronic communications service and remote computing services provider headquartered at 1601 Willow Road, Menlo Park, California, 94025.

ATTACHMENT A - 1
USAO #2018R00981

1

2

## ATTACHMENT B

### ITEMS TO BE SEIZED

3  **I. Information to be disclosed**

4        To the extent that the information described in Attachment A related to the

5  VICTIM ACCOUNT to be searched is within the possession, custody, or control of

6  Instagram LLC, including any communications, records, files, logs, posts, payment

7  records, or information that has been deleted but is still available to Instagram, LLC, or

8  has been preserved pursuant to requests made under 18 U.S.C. § 2703(f), Instagram, LLC

9  is required to disclose the following information to the government for the VICTIM

10  ACCOUNT listed in Attachment A:

11  ///

12  ///

13  ///

14  ///

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1       a.      The contents of all communications associated with the account,

2  including stored or preserved copies of content sent to and from the account, draft

3  communications, the source and destination of  any communications, the date and time at

4  which the communications were sent;

5       b.      All records or other information regarding the identification of the

6  account, to include full name, physical address, telephone numbers and other identifiers,

7  records of session times and durations, the date on which the account was created, the

8  length of service, the IP address used to register the account, log-in IP addresses

9  associated with session times and dates, account status, alternative e-mail addresses

10  provided during registration, methods of connecting, log files, and means and source of

11  payment (including any credit or bank account number);

12       c.      The types of service utilized;

13       d.      All records or other information stored at any time by an individual

14  using the account, including address books, contact and buddy lists, calendar data,

15  pictures, files, and the contents of any accounts associated with the VICTIM ACCOUNT;

16  and

17       e.      All records pertaining to communications between

18  Facebook/Instagram and any person regarding the account, including contacts with

19  support services and records of actions taken.

20  //

21  //

22  //

ATTACHMENT B - 2
USAO #2018R00981

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 2243(a)(1)(2) (Sexual Abuse of a Minor), and 18 U.S.C. § 1153(a) (Offenses Committed in Indian Country) committed on or about June 2, 2018, including, for each account or identifier listed in Attachment A, information pertaining to the following matters:

//
//
//
//

1            a.      All messages, documents, and profile information, attachments, or

2 other data that serves to identify any persons who use or access the account specified, or

3 who exercise in any way any dominion or control over the specified account;

4            b.      Any address lists or "friend"/contact lists associated with the

5 specified account;

6            c.      The types of services utilized;

7            d.      All messages, documents, attachments and data content relating to or

8 referencing contact between EMMITT JACKSON and the VICTIM ACCOUNT;

9            e.      All subscriber records associated with the specified account,

10 including name, address, local and long distance telephone connection records, or records

11 of session times and durations, length of service (including start date) and types of

12 service utilized, telephone or instrument number or other subscriber number or identity,

13 including any temporarily assigned network address, and means and source of payment

14 for such service) including any credit card or bank account number;

15           f.      Any and all other log records, including IP address captures,

16 associated with the specified account; and

17           g.      Any records of communications between Instagram LLC, and any

18 person about issues relating to the account, such as technical problems, billing inquiries,

19 or complaints from other users about the specified account, including records of contacts

20 between the subscriber and the provider's support services, as well as records of any

21 actions taken by the provider or subscriber as a result of the communications.

22

23

24

25

26

27

28

ATTACHMENT B - 4
USAO #2018R00981

1
2

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS
PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

3       I, _____, attest, under penalties of perjury

4   under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the

5   information contained in this declaration is true and correct.  I am employed by

6   Instagram, LLC and my official title is _____.  I am a

7   custodian of records for Instagram, LLC.  I state that each of the records attached hereto

8   is the original record or a true duplicate of the original record in the custody of Instagram,

9   LLC, and that I am the custodian of the attached records consisting of

10  _____ (pages/CDs/kilobytes).

11  I further state that:

12       a.      all records attached to this certificate were made at or near the time of the

13  occurrence of the matter set forth, by, or from information transmitted by, a person with

14  knowledge of those matters;

15       b.      such records were kept in the ordinary course of a regularly conducted

16  business activity of Instagram, LLC; and

17       c.      such records were made by Instagram, LLC as a regular practice.

18       I further state that this certification is intended to satisfy Rule 902(11) of the

19  Federal Rules of Evidence.

20

21  Date: _____  Signature: _____

22

23

24

25

26

27

28